Matthew Righetti, Esq. (SBN: 121012)
matt@righettilaw.com
John Glugoski, Esq. (SBN: 191551)
jglugoski@righettilaw.com
**RIGHETTI GLUGOSKI, P.C.**
220 Halleck St. Suite 220
San Francisco, CA 94129
Telephone: (415) 983-0900

Reuben D. Nathan (State Bar No. 208436)
**NATHAN & ASSOCIATES, APC**
2901 W. Coast Highway, Suite 200
Newport Beach, CA 92663
Tel. No.: (949) 270-2798
E-Mail: rnathan@nathanlawpractice.com

Attorneys for Plaintiff DARREN RYAN

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARREN RYAN, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MR. BAR-B-Q PRODUCTS LLC; and Does 1 through 10, Inclusive.<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br><br><br>**JURY TRIAL DEMANDED** |

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

Plaintiff, Darren Ryan ("Plaintiff" or "Mr. Ryan") brings this action on behalf of himself, and all other similarly situated persons against MR. BAR-B-Q PRODUCTS LLC ( "MR. BAR-B-Q" or "Defendant").  Plaintiff makes the following allegations based upon information and belief, except as to the allegations specifically pertaining to himself, which are based on personal knowledge.

## INTRODUCTION

1. Stainless steel is known for its corrosion resistance attributes in environments where carbon and low-alloy tool steels would corrode[1]. The term "stainless steel" refers to iron-based alloys that include the element of chromium of at least 10.5% in composition. The resistance to corrosion depends upon the chemical composition of the stainless steel, chiefly the chromium content.

2. In the 1930's, the American Iron and Steel Institute first developed a system to grade steel.  This system combined with the Society of Automotive Engineers (SAE) International formed a more standardized three-digit numbering system.  The American Society for Testing and Materials (ASTM) developed a six-digit numbering system for categorizing stainless steel. There are also other systems for grading stainless including grades and series.

3. There are five general categories of stainless steels, which includes 1) Austenitic, 2) Ferritic, 3) Martensitic, 4) Duplex and 5) Precipitation-hardening[2].

4. The grade of the stainless steel determines the alloy's durability, quality, and resistance to corrosion.

5. Carbon steel is used to describe two distinct types of steel: carbon steel and low-alloy steel. Stainless steel, on the other hand, is a specialized group of steel alloys designed to resist corrosion. Carbon steel is less expensive than stainless steel, because it contains a lower percentage of alloying elements.

---

[1]  https://www.corrosionpedia.com/2/2022/substances/metals/an-introduction-to-stainless-steels (last visited March 2024)

[2]  De Cooman, Bruno Charles (April 2016). Lecture on stainless steel. Pohang University of Science and Technology Korea Graduate Institute of Ferrous Technology.

6. Each grade of stainless steel has slightly different chemical compositions which cause a difference in physical appearance to the naked eye.

7. 'Stainless steel' (also known as "inox") is corrosion-resistant steel (CRES). "Stainless steel's resistance to corrosion results from the chromium, which forms a passive film that can protect the material and self-heal in the presence of oxygen[3]."

8. Corrosion is a natural process that converts refined material into a chemically stable oxide which causes the gradual deterioration by chemical or electrochemical reaction with the environment. Stainless steel is corrosion resistant, making it popular and attractive for use in the manufacturing of products such as vehicles, computers, surgical appliance, instruments, cutlery, and other cookware. Its strength and corrosion resistance abilities have also prompted the use of stainless steel in pharmaceutical and food processing plants[4].

9. Stainless steels do not suffer uniform corrosion impacts when exposed to wet environments whereas carbon steel suffers from corrosion immediately when put in wet environments. Unprotected carbon steel rusts readily when exposed to a combination of air and moisture. The resulting iron oxide surface layer which will occupy a larger volume than the stainless steel in the carbon steel is porous and fragile, which will expand and flake and eventually fall away or flake off, thereby exposing the underlying steel to further attack and degradation. This is the reason corrosion occurs so quickly with carbon steel.

10. On the other hand, the chromium content in stainless steel creates passivation, which will spontaneously form a microscopically thin inert surface film of chromium oxide. "This passive film prevents further corrosion by blocking oxygen diffusion to the steel surface and thus prevents corrosion from spreading into the bulk of

---

[3] Davis, Joseph R., ed. (1994). Stainless Steels. ASM Specialty Handbook Materials Park, OH: ASM International, ISBN 97800871705037, Achieved from the original on 14 April 2021.

[4] Zaffora, Andrea; Di Franco, Francisco; Santamaria, Monica (October 2021). "Corrosion of stainless steel in food and pharmaceutical industry." Current Opinion in Electrochemistry. 29 Article 100760.

the metal[5]." The reaction of the chromium oxide with the oxygen in the air prevents the steel from corroding. "This film is self-repairing, even when scratched or temporarily disturbed by an upset condition in the environment that exceeds the inherent corrosion resistance of that grade[6]."

11. Mr. Bar-B-Q was founded in 1972. It markets and advertises itself as "committed to providing consumers innovative, superior quality products at an excellent value[7]."

12. Mr. Bar-B-Q sells a variety of products including accessories, on the grill, in addition to preparatory and cleaning care products. Mr. Bar-B-Q also owns and operates other branded businesses such as "Chef Master," which can be found online at the web address http://www.chef-master.com (last visited April 24, 2024).

13. Mr. Bar-B-Q also sells a variety of products through the Chef-Master brand, such as Whip Cream Products, including dispensers and chargers for the dispensers. Mr. Bar-B-Q makes several claims, as set forth below:



---

[5]   Olsson, Clas; Herting, Gunilla; Odnevall Wallinder, Inger (2006). "Passive Films on Stainless Steel: Recent Nano-Range Research". ACOM.

[6]   Chapter 5 corrosion resistance of stainless steels". www.worldstainless.org. Archived from the original on 12 September 2021. Retrieved 1 October 2021

[7]   https://mrbarbq.com/about-mr-bar-b-q/ (last visited April 11, 2024)

14. Mr. Bar-B-Q represents and warrants to consumers that the Chef Master chargers it sells to operate Chef Master whip dispensers are "100% STAINLESS STEEL," which is set forth below:



15. Mr. Bar-B-Q runs other marketing campaigns to support its claims that Chef Master's chargers are "100% STAINLESS STEEL." Consumers love stainless steel products based on the quality of the products, its environmental attributes and its metallurgical benefits. "Stainless steel is a fantastically green material because it is 100 percent recyclable. In fact, more than half of all the stainless steel materials that are in use today have been sourced from scrap materials. What's more, its production does not produce toxic run-off. Individuals and business entities can make a huge difference by simply going for stainless steel rather than other non-recyclable raw materials."8

//

//

---

8 https://www.ulbrich.com/blog/stainless-sustainability-the-circular-economy-of-metal/#:~:text=Stainless%20steel%20is%20a%20fantastically,not%20produce%20toxic%20run%2Doff.

4
**COMPLAINT**

16. "Stainless steel is 100% recyclable into the same product with no reduction in quality. The metal's high scrap value and recyclability ensures that it is diverted from landfills and recaptured for use in new stainless steel[9]."

17. As set forth in the picture below, the Chef Master products at issue in this case are the Chargers:



(referred to individually as "product" or collectively referred to as "Products").

18. This labeling deceives consumers into believing that they are paying for and receiving products that conform to Defendant's representations and warranties that the Products are 100% stainless steel. Defendant's Products do not live up to these representations.

19. Contrary to the "100% STAINELSS STEEL" labeling, however, it is alleged that each of the Products are not "100% STAINLESS STEEL." Plaintiff has tested the Products by an independent third party that confirms the Products are not 100% stainless steel.

20. Defendant's representations are false, misleading, unfair, unlawful, and are likely to deceive members of the public and continue to do so. Defendants' practices

---

[9] https://www.ssina.com/value-propositions/sustainability/#:~:text=for%20their%20use.-,Stainless%20steel%20is%20100%25%20recyclable%20into%20the%20same%20product%20with,use%20in%20new%20stainless%20steel.

violate California's Consumer Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.* ("CLRA"), California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* ("UCL"), California's False Advertising Law, and Cal. Bus. & Prof. Code § 17500 *et seq.* ("FAL"). Defendant's representations also give rise to Plaintiff's nationwide class claims for negligent misrepresentation, fraud, and unjust enrichment.

## JURISDICTION AND VENUE

21. This Court has personal jurisdiction over Defendant. Defendant purposefully avails itself of the California consumer market and distributes the Products to hundreds of locations within this County and also via physical and online retail locations throughout California and the United States, where the Products are purchased by thousands of consumers every day. Mr. Bar-B-Q is headquartered in Hauppauge, New York, but the basis of the allegations set forth in the complaint emanate from New York to the remainder of the United States.

22. This Court has original subject-matter jurisdiction over this proposed class action pursuant to 28 U.S.C. § 1332(d), which, under the provisions of the Class Action Fairness Act ("CAFA"), explicitly provides for the original jurisdiction of the federal courts in any class action in which at least one hundred (100) members are in the proposed plaintiff class, any member of the plaintiff class is a citizen of a State different from any Defendants, and the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs. Plaintiff alleges that the total claims of individual members of the proposed Class (as defined herein) are well in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs.

23. Venue is proper in this District under 28 U.S.C. § 1391(a). Substantial acts in furtherance of the alleged improper conduct, including the dissemination of false and misleading information regarding the nature, quality, and/or ingredients of the Products, occurred within this District.

## PARTIES

24. Plaintiff is a citizen of California, residing in the city of San Jose.

25. Defendant MR. BAR-B-Q PRODUCTS LLC is a corporation organized under the laws of New York, its headquarters and principal place of business is located at 10 Commerce Dr., Hauppauge, NY 11788. Defendant produces, markets and distributes various Products across the United States. Among others, those products include Chef Master chargers, which Defendant claims are made with 100% STAINLESS STEEL, but are in fact not 100% STAINLESS STEEL, but rather are made from other materials. Defendant knew that the labeling of the Products is false and misleading to a reasonable consumer, because the Products are not 100% STAINLESS STEEL, which plainly makes the statements inconsistent with the Products' labeling.

## FACTUAL ALLEGATIONS

26. In the last approximately three (3) years, Mr. Ryan made purchase(s) of the Products from retail and online stores while located in San Jose County, California. On June 21, 2023, Mr. Ryan made his last purchase of the Products through Amazon's website www.amazon.com for $24.57. Prior to purchasing, Mr. Ryan also saw, read and relied on the representation and warranty that the Products contained "100% STAINLESS STEEL." Mr. Ryan understood these representations to mean that the Products were "100% STAINLESS STEEL." Mr. Ryan purchased the Products at a substantial price premium and would not have bought the Products had he known that the labeling he relied on was false, misleading, deceptive, and unfair. Mr. Ryan would purchase the Products again in the future if Defendant changed the composition of the Products so that they conformed to their "100% STAINLESS STEEL" labeling and marketing.

27. Defendant represents to its consumers that the Products are "100% STAINLESS STEEL."

28. The Products are not "100% STAINLESS STEEL."

29. There is no debate that consumer preferences have shifted towards safer products and products friendly to the environment. Consumers are willing to pay more for products with these attributes. By representing that the Products are "100% STAINLESS STEEL," Defendant has taken advantage of consumers' preference for

products that are non-corrosive, environmentally friendly and the corresponding impact the corrosiveness would have on the food related products. Plaintiff and consumers pay more for these products, because of the higher quality, health, and environmental benefits associated with stainless steel.

30. Plaintiff and the Class Members reasonably relied on Defendant's false and/or misleading representations that the Products are "100% STAINLESS STEEL." Plaintiff and Class Members did not know and had no reason to believe, that the Products were misbranded, false, and misleading and would not have bought the Products had they known the truth about Products. Defendant's representations that the Products are "100% STAINLESS STEEL" is material to a reasonable consumer, including Plaintiff and Class Members when deciding to purchase it and in fact was material to the purchase of the Products.

## CLASS ACTION ALLEGATIONS

31. Plaintiff seeks to represent a class defined as all persons in the United States who purchased the Products during the class period (the "Class"). Excluded from the Class are Defendant, its affiliates, employees, officers and directors, persons or entities that purchased the Products for resale, and the Judge(s) assigned to this case.

32. Plaintiff also seeks to represent a Subclass of all persons in California who purchased the Products during the class period (the "California Subclass"). Excluded from the California Subclass are Defendant, its affiliates, employees, officers and directors, persons or entities that purchased the Products for resale, and the Judge(s) assigned to this case.

33. Members of the Class and California Subclass are collectively referred to herein as "Class Members."

34. There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the putative classes that predominate over questions that may affect individual Class Members include, but are not limited to the following:

a. whether Defendant's misrepresented material facts concerning the Products on the label of every Product;

b. whether Defendant's conduct was unfair and/or deceptive;

c. whether Defendant has been unjustly enriched as a result of the unlawful, fraudulent, and unfair conduct alleged in this Complaint such that it would be inequitable for Defendant to retain the benefits conferred upon them by Plaintiff and the Class and California Sub-Class;

d. whether Defendants breached express warranties to Plaintiff and the classes;

e. whether Plaintiff and the classes have sustained damages with respect to the common-law claims asserted, and if so, the proper measure of their damages; and

f. Whether Plaintiff and members of the Class and California Subclass are entitled to injunctive relief.

35. Plaintiff's claims are typical of those of other Class Members because Plaintiff, like all members of the classes, purchased Defendant's Products bearing the "100% STAINLESS STEEL" representations and Plaintiff and Class Members sustained damages from Defendant's wrongful conduct.

36. Plaintiff will fairly and adequately protect the interests of the classes and have retained counsel that is experienced in litigating complex class actions. Plaintiff has no interests which conflict with those of the classes.

37. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

38. The prerequisites to maintaining a class action for equitable relief are met as Defendant has acted or refused to act on grounds generally applicable to the classes, thereby making appropriate equitable relief with respect to the classes as a whole.

//

39. The prosecution of separate actions by members of the classes would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another might not. Additionally, individual actions could be dispositive of the interests of the classes even where certain Class Members are not parties to such actions.

## COUNT I

## Violation Of California's Consumers Legal Remedies Act ("CLRA"), California Civil Code §§ 1750, *et seq.*

### *(Injunctive Relief Only)*

40. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

41. Plaintiff Ryan brings this claim individually and on behalf of the members of the proposed California Subclass against Defendants.

42. This cause of action is brought pursuant to California's Consumers Legal Remedies Act, Cal. Civ. Code §§ I750-I785 (the "CLRA").

43. Plaintiff Ryan and the other members of the California Subclass are "consumers," as the term is defined by California Civil Code § 1761(d), because they bought the Products for personal, family, or household purposes.

44. Plaintiff Ryan, the other members of the California Subclass, and Defendants have engaged in "transactions," as that term is defined by California Civil Code § 1761(e).

45. The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and Defendants' conduct in transactions is intended to result in, and which did result in, the sale of goods to consumers.

46. As alleged more fully above, Defendants have violated the CLRA by falsely representing to Plaintiff Ryan and the other members of the California Subclass that the Products are "100% STAINLESS STEEL," which is false.

47. As a result of engaging in such conduct, Defendant has violated California Civil Code § 1770(a)(5), (a)(7) and (a)(9).

48. On April 25, 2024, Plaintiff Ryan mailed a notice letter to Defendant consistent with California Civil Code § 1782(a). The letter was sent on behalf of Plaintiff Ryan and all other persons similarly situated.

49. Accordingly, pursuant to California Civil Code § 1780(a)(3), Plaintiff Ryan, on behalf of himself and all other members of the California Subclass seeks injunctive relief.

## COUNT II

### Violation Of California's Unfair Competition Law ("UCL"),
### California Business & Professions Code §§ 17200, *et seq.*

50. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

51. Defendant is subject to California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq*. The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising …."

52. Defendant violates statutes enacted in California and in each of the fifty (50) states and the District of Columbia that are designed to protect consumers against unfair, deceptive, fraudulent, unconscionable trade and business practices, and false advertising. These statutes include:

   a) Alabama Deceptive Trade Practices Act, Ala. Statues Ann. § 8-19-1, et seq.;

   b) Alaska Unfair Trade Practices and Consumer Protection Act, Ak. Code § 45.50.471, et seq.;

   c) Arizona Consumer Fraud Act, Arizona Revised Statutes, § 44-1521, et seq.;

   d) Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, et seq.;

   e) Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101, et seq.;

   f) Wyoming Consumer Protection Act, Wyoming Stat. Ann. §40-12-101, et seq.

g) Connecticut Unfair Trade Practices Act, Conn. Gen. Stat § 42-110a, et seq.;

h) Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, et seq.;

i) District of Columbia Consumer Protection Procedures Act, D.C. Code § 28 3901, et seq.;

j) Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. §501.201, et seq.;

k) Georgia Fair Business Practices Act, § 10-1-390 et seq.;

l) Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statues § 480 1, et seq., and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statutes § 481A-1,et seq.;

m) Idaho Consumer Protection Act, Idaho Code § 48-601, et seq.;

n) Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS §505/1, et seq.;

o) Indiana Deceptive Consumer Sales Act, Indiana Code Ann. § 24-5-0.5-0.1, et seq.;

p) Iowa Consumer Fraud Act, Iowa Code § 714.16, et seq.;

q) Kansas Consumer Protection Act, Kan. Stat. Ann § 50 626, et seq.;

r) Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. § 367.110, et seq., and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann § 365.020, et seq.;

s) Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. §51:1401, et seq.;

t) Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, et seq., and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, et seq.;

u) Maryland Consumer Protection Act, Md. Com. Law Code § 13-101, et seq.;

v) Massachusetts Unfair and Deceptive Practices Act, Mass. Gen. Laws ch.   93A;

w) Michigan Consumer Protection Act, § 445.901, et seq.;

x) Minnesota Prevention of Consumer Fraud Act, Minn. Stat § 325F.68, et seq., and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43, et seq.;

y) Mississippi Consumer Protection Act, Miss. Code Ann. § 75-24-1, et seq.;

z) Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, et seq.;

aa) Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code § 30-14-101, et seq.;

bb) Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59 1601, et seq., and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301, et seq.;

cc) Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. § 598.0903, et seq.;

dd) New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:1, et seq.;

ee) New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8 1, et seq.;

ff) New Mexico Unfair Practices Act, N.M. Stat. Ann. § 57 12 1,et seq.;

gg) New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law § 349, et seq.;

hh) North Dakota Consumer Fraud Act, N.D. Cent. Code § 51 15 01, et seq.;

ii) North Carolina Unfair and Deceptive Trade Practices Act, North Carolina General Statutes §75-1, et seq.;

jj) Ohio Deceptive Trade Practices Act, Ohio Rev. Code. Ann. § 4165.01. et seq.;

kk) Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, et seq.;

ll) Oregon Unfair Trade Practices Act, Rev. Stat § 646.605, et seq.;

mm) Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Penn. Stat. Ann. §201-1, et seq.;

nn) Rhode Island Unfair Trade Practices And Consumer Protection Act, R.I. Gen. Laws §6-13.1-1, et seq.;

oo) South Carolina Unfair Trade Practices Act, S.C. Code Laws § 39-5-10, et seq.;

pp) South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws § 37 24 1, et seq.;

qq) Tennessee Trade Practices Act, Tennessee Code Annotated § 47-25-101, et seq.;

rr) Texas Stat. Ann. § 17.41, et seq., Texas Deceptive Trade Practices Act;

ss) Utah Unfair Practices Act, Utah Code Ann. § 13-5-1, et seq.;

tt) Vermont Consumer Fraud Act, Vt. Stat. Ann. tit.9, § 2451, et seq.;

uu) Virginia Consumer Protection Act, Virginia Code Ann. §59.1-196, et seq.;

vv) Washington Consumer Fraud Act, Wash. Rev, Code § 19.86.010, et seq.;

ww) West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-6-101, et seq.;

xx) Wisconsin Deceptive Trade Practices Act, Wis. Stat. § 100. 18, et seq.;

53. Defendant violated the "unlawful" prong of the UCL by violating the CLRA and the FAL, and the above referenced statutes in Paragraph 52.

54. Defendant violated the "unlawful" prong of the UCL by violating the CLRA and the FAL, as alleged herein.

55. Defendant's misrepresentations and other conduct, described herein, violated the "unfair" prong of the UCL in that their conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits.

56. Defendant violated the "fraudulent" prong of the UCL by misrepresenting that the Products are "100% STAINLESS STEEL," when in fact they are not.

57. Plaintiff Ryan and the California Subclass lost money or property as a result of Defendant's UCL violations because: (a) they would not have purchased the Products on the same terms if they knew that the Products were not "100% STAINLESS STEEL;" (b) they paid a substantial price premium compared to other products due to Defendant's misrepresentations; and (c) the Products do not have the characteristics, uses, or benefits as promised.

# COUNT III

## Violation Of California's False Advertising Law ("FAL"),

## California Business & Professions Code §§ 17500, *et seq.*

58. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

59. Plaintiff Ryan brings this claim individually and on behalf of the members of the proposed California Subclass against Defendant.

60. California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*, makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, ... in any advertising device ... or in any other manner or means whatever, including over the Internet, any statement, concerning ... personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

61. Defendant committed acts of false advertising, as defined by §§17500, *et seq.*, by misrepresenting that the Products are "100% STAINLESS STEEL" when they are not.

62. Defendant knew or should have known through the exercise of reasonable care that their representations about the Products were untrue and misleading.

63. Defendant's actions in violation of §§ 17500, *et seq.* were false and misleading such that the general public is and was likely to be deceived. Plaintiff Ryan and the California Subclass lost money or property as a result of Defendant's FAL violations because: (a) they would not have purchased the Products on the same terms if they knew that the Products were not "100% STAINLESS STEEL;"; (b) they paid a substantial price premium compared to other products due to Defendants' misrepresentations; and (c) the Products do not have the characteristics, uses, or benefits as promised.

//

## COUNT IV

### Unjust Enrichment

64. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

65. Plaintiff brings this claim individually and on behalf of the proposed Class against Defendant.

66. Plaintiff and Class Members conferred benefits on Defendant by purchasing the Products.

67. Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff and Class Members' purchases of the Products. Retention of those monies under these circumstances is unjust and inequitable because of Defendant's misrepresentations about the Products, which caused injuries to Plaintiff and members of the classes because they would not have purchased the Products if the true facts had been known.

68. Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff and Class Members is unjust and inequitable, Defendant must pay restitution to Plaintiff and Class Members for their unjust enrichment, as ordered by the Court.

## COUNT V

### Fraud

69. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

70. Plaintiff brings this claim individually and on behalf of the proposed Class, and California Subclass against Defendant.

71. As discussed above, Defendant provided Plaintiff and Class Members with false or misleading material information about the Products by representing that they are "100% STAINLESS STEEL." Defendants made that misrepresentation knowing it was false.

//

//

72. Defendant's misrepresentations, upon which Plaintiff and Class Members reasonably and justifiably relied, were intended to induce and actually induced Plaintiff and Class Members to purchase the Products.

73. Defendant's fraudulent actions harmed Plaintiff and Class Members, who are entitled to damages and other legal and equitable relief as a result.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment on behalf of himself and members of the Class, and California Subclass, as follows:

A. For an order certifying the Class and California Subclass under Rule 23 of the Federal Rules of Civil Procedure; naming Plaintiff as Class and California Subclass representative; and naming Plaintiff's attorneys as Class Counsel representing the Class and California Subclass Members;

B. For an order finding in favor of Plaintiff, the Class, and the California Subclass on all counts asserted herein;

C. For an order awarding statutory, compensatory, treble, and punitive damages in amounts to be determined by the Court and/or jury;

D. For injunctive relief enjoining the illegal acts detailed herein;

E. For prejudgment interest on all amounts awarded;

F. For an order of restitution and all other forms of equitable monetary relief; and

G. For an order awarding Plaintiff his reasonable attorneys' fees and expenses and costs of suit.

//
//

**JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury on all claims so triable.

Dated: May 1, 2024                    Respectfully submitted,

**NATHAN & ASSOCIATES, APC.**


By: _____*/s/ Reuben D. Nathan*_____

Reuben D. Nathan
**NATHAN & ASSOCIATES, APC**
Reuben D. Nathan (State Bar No. 208436)
2901 W. Coast Highway, Suite 200
Newport Beach, CA 92663
Tel. No.: (949) 270-2798
Fax No.: (949) 209-0303
E-Mail: rnathan@nathanlawpractice.com